UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMHERST COLLEGE, CAROLYN MARTIN, JAMES LARIMORE, TORIN MOORE, SUSIE MITTON SHANNON, and LAURIE FRANKL,<br><br>　　　　Defendants. | Case No.: 16-mc-00128-RSL<br><br>PLAINTIFF'S OPPOSITION TO SANDRA JONES' MOTION TO QUASH SUBPOENA OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER<br><br>**REQUEST FOR TELEPHONIC HEARING WITH COURT** |

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL
55848-001 \ 2150966.docx

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## I. INTRODUCTION

Plaintiff John Doe ("Plaintiff" or "Doe"),[1] a former student at Amherst College ("Amherst" or "the College") in Amherst, Massachusetts, was expelled in December 2012, in his Senior year, as a result of an accusation by Sandra Jones ("Jones") that he had sexually assaulted her almost two years before, on February 4-5, 2012. Doe has filed suit against Amherst and its administrators (the "Individual Defendants") in the United States District Court for the District of Massachusetts asserting claims under federal and Massachusetts law and seeking injunctive relief and damages.[2]

Jones first made her complaint to Amherst administrators in April 2013. *See* Ex. A to Deluhery Decl.(Am. Compl.), ¶27a. However, despite its written policy that such complaints should be resolved within 60 to 90 days, the College allowed Jones to delay the start of the disciplinary process until convenient for her. *Id.* ¶27b. Doe was not informed of the charge against him until November 1, 2013. *Id.* ¶29. The matter was then immediately put on a fast track: an investigator was appointed and she completed her investigation within two weeks; the hearing was held on December 12 – just prior to final exams – and the Hearing Board released its decision the next day. The whole process went from start to finish in six weeks. *Id.* ¶¶29, 47, 57-58.

Jones testified at the hearing that the sexual interaction took place in her room, which she shared with Doe's then girlfriend, EK, who was away for the weekend. According to Jones's story, she willingly began to perform oral sex on him; however, at some point during the course of the sex, she changed her mind and told Doe to stop, but he continued despite her withdrawal of consent. *Id.* ¶53. For his part, Doe had no memory of the interaction since, as the Amherst

---

[1] This matter is pending in the U.S. District Court for the District of Massachusetts. That court has allowed Plaintiff's motion to proceed under a pseudonym, and the parties have, by agreement, referred to the moving party here as "Sandra Jones", which is also a pseudonym.

[2] Plaintiff's Amended Complaint ("Am. Compl.") is attached as Exhibit A to the Declaration of Megan Deluhery ("Deluhery Decl."). His Opposition to Amherst's pending Motion for Judgment on the Pleadings, attached as Exhibit B to Deluhery Decl., summarizes his legal theories.

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx

-1-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Hearing Board later credited, he was intoxicated to the point of being "blacked out." He could only defend by stating that this was not something he would ever do. *Id.* ¶¶54, 58.

Jones told the Hearing Board that the assault was "terrifying and traumatic for me," and that she was feeling so "alone and confused" that she had "texted a friend to come over to talk to [her] and spend the night." *Id.* ¶¶54, 56. However, she produced no texts to the investigator or to the Hearing Board. The investigator told the Hearing Board that "Ms. [Jones] did not tell anyone immediately thereafter about what had happened with Mr. [Doe]. . . . [S]he didn't keep a journal or send emails about it." *Id.* ¶52.

The Hearing Board found that Doe was responsible for "sexual assault" since Jones had withdrawn her consent. It also found that he had been "blacked out," but that "[b]eing intoxicated or impaired by drugs or alcohol is never an excuse." *Id.* ¶58.

Within four months after he had been expelled, Doe tracked down and obtained copies of text message exchanges Jones had with two other men immediately after the episode with Doe. *Id.* ¶¶63-68.

The first set of exchanges were with ML, the person she invited to her room after Doe left, and whom she invited not to "talk to her" but for sexual activity:

| | |
|---|---|
| Sandra Jones: | I mean I happen to have my room to myself this weekend, if you wanted to come over and entertain me . . . . |
| ML: | I'm not a very good singer despite all the rumors. |
| Sandra Jones: | Who said anything about singing?… |
| Sandra Jones: | I thought you had a military-trained bod? |
| ML: | …which is sore from working out so sexily today. |
| Sandra Jones: | Wow just one workout wears you out? |
| ML: | Wow, let's keep attacking my manliness. |
| Sandra Jones: | Well you could just prove me wrong by coming overrr |
| ML: | U sound desperate. Three "r's in that over. |

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx

-2-

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*See* Ex. A (Am. Compl.) ¶64. In an affidavit authenticating the texts, ML stated that Jones appeared "friendly, flirtatious, and spirited" when he arrived and did not appear "anxious, stressed, depressed, or otherwise in distress" at any time during the hours he spent with her that evening. *Id.* ¶65.

The other texts were with DR, an upperclassman Residential Counselor who was friendly with Jones. Jones began to exchange text messages with him just after John Doe exited her room:

| | |
|---|---|
| Sandra Jones: | Ohmygod I jus did something so fuckig stupid |
| DR: | What did you do |
| Sandra Jones: | Fucked [John Doe]. . . . FUCK |
| DR: | No you didn't . . . . |
| Sandra Jones: | official story is he puked and I took care of him but yes. Yes I did. FUCK |
| DR: | [Sandra] what are you doing???????? |
| Sandra Jones: | Oh and apparently [ML]s coming over so nothing happened everything's fine . . . |

*Id.* ¶66. Jones went on to express her fear of the fallout when her roommate, EK, and others found out that she had had sex with EK's boyfriend, especially since, "I'm pretty sure [John Doe] was too drunk to make a good lie out of shit." She said that if EK were to find out, "[S]he would literally never speak to me again." *Id.* ¶67. DR then suggested that Sandra Jones "put all the blame on [John Doe]." Sandra Jones responded that "[EK] knows me it's pretty obvi I wasn't an innocent bystander." They agreed that they both "hate[d]" John Doe. Sandra Jones then

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx

-3-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

wondered that since she and John Doe "didn't technicallyyyy have sex…[is it] not quite as bad?" *Id.*

The text messages between Sandra Jones and DR continued even during Sandra Jones's interactions with ML, who arrived during Jones's extended texted conversation with DR. In her messages to DR after ML arrived, Sandra Jones complained, "why is he just talking to me." *Id.* ¶68. She described how she was doing her best to seduce him: "Like, hot girl in a slutty dress. Make. Your. Move. YEAH." *Id.* In the late morning of February 5, 2012, Sandra Jones sent the following text message: "Ohmygod action did not happen til 5 in the fucking morning." *Id.*

In April 2014 Doe submitted his newly discovered evidence to Amherst, requesting that Amherst reinstate him or reopen the proceedings. Amherst refused. *Id.* ¶¶72-73.

This lawsuit ensued. Doe alleges, among other things, that Amherst breached its obligations under its *Student Handbook* to provide a "thorough, impartial and fair investigation," as well its obligation under Massachusetts law to provide him with procedural and substantive "basic fairness." *See Doe v. Brandeis University,* 2016 WL 1274533, *31-33 (March 31, 2010). He has also alleged that Amherst violated Title IX in its preferential treatment of Jones. Given the Board finding that Doe was incapacitated during the period during which Jones was indisputably acting voluntarily, she was, under Amherst's policies, at least equally guilty. Yet no charge against her was ever considered. While she was repeatedly urged by Amherst's administrators to proceed, Doe was never even informed that complaining against Jones was an option. In the end, and for the same alleged conduct, Jones was allowed to graduate while Doe was expelled.

Doe has subpoenaed Jones to a deposition and has sought various documents from her. Jones has moved to quash the subpoena or for a protective order under FRCP 26(c)(1) and 45, arguing that she has no relevant or "non-duplicative" evidence, that plaintiff is improperly trying to "retry" his disciplinary case in federal court, and that the deposition would offend FRE 412, which deals with the admissibility at trial of "evidence offered to prove that a victim engaged in other sexual behavior."

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL
55848-001 \ 2150966.docx
-4-

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## II. ARGUMENT

### A. The Testimony and Documents Sought by the Plaintiff are Relevant and Highly Material to the Pending Proceeding.

This is the second motion to quash sought by a third party witness in this case. In the first, Eric Hamako, a member of the Amherst Hearing Board in the case, sought to avoid giving any testimony. In denying his motion, Magistrate Judge Robertson summarized the legal standard as follows:

> Recently amended Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[u]nless otherwise limited by court order … [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Green v. Cosby*, No. 14-cv- 30211-MGM, 2015 WL 9594287, at *2 (D. Mass. Dec. 31, 2015) (quoting *In re New England Compounding Pharmacy, Inc. Products Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)).

Ex. C to Deluhery Decl. at p. 4-5.

Jones's principal argument here is that under the law governing plaintiff's claims, the only facts he would ever be allowed to put into evidence at trial are those shown on the face of the disciplinary hearing record, and therefore any relevant evidence Jones has would be entirely duplicative of the evidence plaintiff already possesses. Hamako's similar argument – that since his only involvement was as a tribunal member, he had nothing "non-duplicative" to add to what was on the record – was rejected by Magistrate Judge Robertson. Even putting aside the point that Jones, as a non-party witness, has no right to challenge the validity of plaintiff's claims, her

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx

-5-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

cabined perception of the law is quite wrong. *See e.g. Doe v. Brandeis, supra* (setting out law applicable to state law contract claim); *Doe v. Columbia Univ.*, No. 15-1536, 2016 WL 4056034 (2d Cir. July 29, 2016) (setting out law applicable to Title IX claim in this context). Importantly, the forum court clearly has not interpreted the scope of discovery so narrowly. Plaintiff seeks evidence which is indisputably relevant and highly material to the issues in the case.

In the first place, Jones has information relevant to the fairness and thoroughness of the process from its inception to its end, and the differences in the way she was treated by College administrators as compared to Doe. For example, she has knowledge concerning:

- The disciplinary process and her decision to pursue it, including why she sought to pursue it, who encouraged her to do so, why she delayed filing the complaint form after she made her decision to proceed and what involvement Defendants had throughout the process;[3]

- What discussions she had with Amherst officials concerning her changing versions of what happened[4];

- Who bore the responsibility for the failure to produce the texts at (or before) the hearing; whether Amherst administrators ever informed Jones that she was required to preserve and disclose her electronic communications; what interactions did she have with Amherst's investigator about that matter;[5]

---

[3] This would include what Jones was told about Amherst's willingness to relax its schedule to accommodate her preference. (By contrast, Amherst refused similar flexibility to Doe, standing by its written policy to justify dismissing Doe's new evidence since it was not submitted within a one week post-hearing deadline for his appeal, but not, as Jones alleges, based on the substance of the evidence.) Relatedly, another issue is the involvement of LR, an intermediary between students and administrators in the ongoing sexual assault controversy at Amherst. LR was a campus leader in the anti-sexual assault movement, was appointed as one of two students to Amherst's Special oversight Committee on Sexual Misconduct, and on personal terms with all of the relevant officials of the Amherst administration. Jones decided to prosecute Doe only after LR told her that Jones could expect to win her case since LR would testify in her favor. What did LR tell her about her involvement with Amherst administrators and their attitude toward the case?

[4] Jones's original report, in April 2013, was inconsistent with her later reports in significant respects and was never provided to plaintiff until discovery in this case. In her next report – her first written version – she contended that the entire episode was non-consensual, and then when she spoke to the investigator, she changed her story again to her final version (consensual at first).

[5] After the investigator produced audio recordings of the interviews, Doe amended his complaint based on the recording of the interview of Jones and his deposition of the investigator. Doe now alleges that the "investigator did not collect any text messages from Sandra Jones or anyone else who had exchanged text messages with her at or about the time of the relevant events. The investigator failed to ask Sandra Jones to identify any individuals she saw or communicated with immediately after the sexual encounter with John Doe and, accordingly, neither interviewed any such persons nor identified them in her report. According to the investigator, she employed a practice of systematically ignoring prior inconsistent statements of female complainants based on her beliefs about how female complainants interpret their own sexual interactions over time." *See* Ex. A (Am. Compl.) at ¶37. Jones, however,

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx

-6-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

- What information and assurances were given to her, as to her own exposure for having performed oral sex on an incapacitated person;

- Her understanding of the disciplinary process either from the *Student Handbook* or from communications with Defendants and her faculty advisor, which would be highly relevant to what "reasonable expectations" of the process existed;

- The environment on campus with respect to sexual assault against female students, and her own involvement in or knowledge of raising awareness of various Amherst administrators to this issue; and

- What knowledge Jones had, if any, of Doe's request to Amherst that it reopen the investigation or proceeding, and any interactions she has had with Amherst on that topic.

More generally, Doe is entitled to seek from Jones evidence supporting his view that the texts would have made a difference in the outcome of the proceeding, including inquiry about:

- The text messages, including review of their content and clarification of any ambiguities, information concerning how they were sent and whether Jones had them at the time she made her reports to Amherst;

- How she would seek to reconcile the statements made in the text messages with her testimony at the hearing, for example, why did she say she "hated" Doe, why she said Doe was "too drunk to make a lie out of shit", why would it have been "obvi" she was not an "innocent bystander";

- Her interaction with ML and her portrayal of that interaction to the Amherst Hearing Board, as compared with her text messages to ML and DR; how she would reconcile her testimony of having a friend over because she was "traumatized", "alone and confused" with what the texts show to concerning her state of mind; and

- What other texts and email or other, non-written, communications did she conduct about the events of the night in question.

These subjects are examples. Until a deposition begins, it is very difficult to know where it will lead and impossible to predict all the topics that may be explored with a witness. Only

---

states in her Memorandum that the investigator "asked for production of any text messages." (From this, she makes the startlingly ironic contention that since the fault for their non-production at the time was hers, not Amherst's, plaintiff's claim against Amherst is invalid – "disingenuous" -- and therefore cannot justify taking her deposition.) *See* Jones Motion, Dkt. # 1 at p. 8. Plaintiff is certainly entitled to have Jones's testimony on this point.

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx

-7-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Jones—and no one else—knows what evidence she can provide. There is simply no basis at this stage to prevent or limit Jones's deposition.

### B. FRE 412 Does Not Preclude the Proposed Inquiry

Federal Rule of Evidence 412 does not warrant some other outcome. First, FRE 412 applies only to evidence offered either to prove a victim's sexual predisposition or to prove that a victim engaged in other sexual behavior. *See* FRE 412(a). That Rule would have no conceivable application to any of the topics identified in the bulleted list above, except possibly concerning Jones's text messages with and testimony about her interaction with ML—a sexual interaction she consensually engaged in immediately after Doe left her room in February 2012.

Second, as provided by FRCP 26(b), "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *See United States v. Meyer*, 398 F.2d 66, 76 (9th Cir. 1968) ("[D]iscovery is not limited to evidence admissible at trial…."); *Cockburn v. SWS Indus.*, Inc., Case No. C10-1566-RSL (W.D. Wash. Apr. 4, 2012) ("The discovery standard is a liberal one. …'[I]nformation need not be admissible at the trial' to be considered relevant'" (quoting Fed. R. Civ. P. 26(b)).).[6] The ML matter is highly relevant for at least two reasons, neither of which fall under FRE 412's area of concern: (1) Jones purported to testify to the Hearing Board about a friend she invited to "spend the night" in her room, likely leading to an incorrect assumption by the board members that the friend came to support her after an assault when that is not what happened; and (2) Jones's demeanor and level of anxiety—or not—in the minutes/hours after her interaction with Doe, which is relevant to her state of mind about the character and nature of that interaction and whether or not it was consensual. While this may touch upon a sexual encounter Jones had with ML, it is not for either of the inadmissible purposes—either to prove that she engaged in sexual behavior or to prove her predisposition.

---

[6] Significantly, the only cases cited by Jones for the proposition that Rule 412 would bear upon the scope of discovery, are cases where the court – in each instance the forum court – *allowed* discovery of other sexual behavior. *See Barta v. City and County of Honolulu,* 169 F.R.D., 132, 136 (1996)(and, at 137, reserving the issue of admissibility to the trial judge); *Giron v. Corrections Corp. of Am.,* 981 F.Supp. 1406, 1408 (1997).

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx                              -8-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1 Rather, this information is relevant to Jones's state of mind at the time and her credibility given

2 how she portrayed this interaction during the hearing.

3     Furthermore, FRE 412 itself provides that "[i]n a civil case," evidence otherwise

4 prohibited may be admitted "if its probative value substantially outweighs the danger of harm to

5 any victim and of unfair prejudice to any party."  That decision would be up to the trial judge and

6 should not be foreclosed by a premature discovery protective order.   If, ultimately, Doe seeks

7 admission of such information, and if the trial court rules that the evidence is covered by the

8 Rule, he will be required to give Jones notice and she will have an opportunity to weigh in on its

9 admissibility in due course.  It would be premature for this court, which will not preside over the

10 trial, to preclude Doe from taking discovery based on a series of assumptions about what he may

11 discover, may seek to offer, and what evidence the trial court may have to decide to admit or

12 deny under FRE 412.[7]

### C. Jones Has Not Shown Any Undue Burden.

14     As Magistrate Judge Robertson held, to demonstrate an "undue burden" the moving party

15 "cannot rely on a mere assertion that compliance [with the subpoena] would be burdensome and

16 onerous without showing the manner and extent of the burden and the injurious consequences of

---

[7] If the court were to entertain any doubt as to whether this subject is within the scope of discovery (which it should not), it would appropriately transfer the motion from this district to the District of Massachusetts.  Rule 45 provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).  Exceptional circumstances have been found where the issuing court was "in a better position to rule on the…motion to quash..due to [its] familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation." *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014).  *See Dispatch Printing Co. v. Zuckerman*, No. 16CV80037 BLOOMVALLE, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016).  In a New York case, the party opposing transfer argued "that the documents sought pursuant to the subpoena duces tecum are irrelevant to the underlying dispute, and that the court need only make a cursory review of the fact of plaintiffs' complaint and the subpoena to recognize the alleged irrelevance." *Patriot Nat'l Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 175 (N.D.N.Y. 2013).  The court where compliance was required rejected the reasoning, finding that "the relevance argument advanced emphasizes the need for the court where the underlying matter lies to decide the matter." *Id*. at 176.  That court concluded that "because the primary argument by Oriska in objecting to the subpoena is that the documents sought are not relevant, and the court with the most familiarity with the case is better positioned to determine whether the documents are indeed relevant, it follows that the court with the most familiarity could also better balance whatever relevance exists against the need to protect Oriska as a non-party." *Id.*  If this Court has any doubts about relevance, it is respectfully requested to transfer the matter to Massachusetts.

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

-9-

55848-001 \ 2150966.docx

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

insisting upon compliance." *See* Ex. C at p. 9 (internal quotations omitted). Jones has not come close to doing so.

Jones asserts that the subpoena was issued "to harass" her, that the deposition will be "hostile and confrontational," and that asking her to review the events in question would be inherently humiliating.[8] There is no evidence to support this claim. Plaintiff's counsel have not said or done anything to warrant the aspersion. As should be self-evident from the above, the purpose of this deposition is to gather evidence. Counsel have taken great care to avoid revealing Jones's true identity – including by unilaterally filing the complaint using the "Jones" pseudonym and not her true name. Once the case was filed, plaintiff and all of the defendant parties entered a Confidentiality Agreement which continues the pseudonym practice and extends it as a requirement for all parties.[9] Furthermore, the agreement also allows any party or witness – *including Jones* – to designate any deposition transcript or produced document as confidential. This affords Jones more than reasonable protection from exposure and embarrassment, while allowing Doe access to the discovery he needs and is entitled to obtain. No doubt Jones feels chary about having to admit that she was less than candid in the Doe disciplinary process, but this type of embarrassment does not constitute the kind of burden that the rules are designed to prevent.

**D.  The Document Requests Are Reasonable in Scope and Pose No Undue Burden.**

Jones does not actually address the 13 enumerated categories of materials sought by the subpoena at all; therefore, the Court need take no action on the Motion with respect to the document requests and Jones should simply comply. In fact, a quick review of those requests shows they are quite reasonable and no undue burden could possibly be claimed. This case arises because the exculpatory text messages Jones sent at the time of her interaction with Doe were not disclosed to or discovered by the investigator during the disciplinary process—they

---

[8] Counsel is aware that plaintiff has a speech impediment and is willing to discuss and agree to reasonable accommodations with her counsel to address the issue.
[9] A copy of the Confidentiality Agreement is attached as Exhibit D to Deluhery Decl.

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL

55848-001 \ 2150966.docx                     -10-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

were only found by Doe months after the process concluded. E-discovery and other materials Jones may have are quite likely to be highly relevant and potentially further bolster Doe's claim that the College's investigation into this matter was biased and breached his reasonable expectations under the *Student Handbook* and Massachusetts law.

The subpoena seeks (1) all documents Jones may have concerning her interactions with Doe (Request Nos. 1, 4), (2) all documents Jones may have concerning the disciplinary proceeding itself, including communications with the investigator, documents submitted to or received from the hearing board, communications with Amherst administrators, communications with hearing witnesses and Jones's friend who assisted her at the hearing (Request Nos. 3, 5-12), (3) communications with the authors of the after-acquired text messages concerning Doe (Request No. 12), (4) all communications Doe had with anyone on February 5, 2012, essentially the day after the alleged assault (Request No. 13) and (5) documents and communications concerning sexual misconduct and/or rape culture (Request No. 2). Jones mentions, in passing, that she was already asked by the investigator if she had text messages, although she does not indicate whether she did at the time or does now (none were ever supplied to the investigator). Jones Motion, Dkt. # 1 at p. 8. In fact, Doe now alleges that the investigator did *not* ask for or receive Jones's text messages. *See* Ex. A (Am. Compl.) at ¶37. Jones also summarily asserts that she "has no non-duplicative information to offer regarding" the disciplinary proceeding itself, and that any information from her would be irrelevant. Jones Motion, Dkt. #1 at p. 8. While she does not address e-discovery or other documents specifically, this is hardly sufficient to meet her burden of demonstrating that she should not be required to produce any responsive materials. As to the document requests, the subpoena should stand and Jones must comply.

### III. CONCLUSION

For the reasons set out herein, Doe respectfully requests that the Court deny the Motion in its entirety.

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL
55848-001 \ 2150966.docx
-11-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## REQUEST FOR TELEPHONIC HEARING

As all counsel involved in this matter, including Jones's counsel, are out of state, Doe respectfully requests that, if oral argument is ordered, the Court permit counsel to participate in the hearing on this matter telephonically.

DATED this 10th day of August, 2016.

    STOKES LAWRENCE, P.S.

By: /s/Elizabeth A. Findley
Elizabeth A. Findley (WSBA #46990)
1420 Fifth Avenue, Suite 3000
Seattle, Washington 98101
Tel: (206) 626-6000
Fax: (206) 464-1407
Email: eaf@stokeslaw.com

and

Megan C. Deluhery (BBO#655564)
TODD & WELD LLP
One Federal St. 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
mdeluhery@toddweld.com

*Pro Hac Vice forthcoming*

Attorneys for Plaintiff John Doe

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL
55848-001 \ 2150966.docx
-12-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2016 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants for the this miscellaneous action:

Kathryn Goater
Rebecca J. Roe
Schroeter, Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, WA 98104
(206) 622-8000
Email: goater@sgb-law.com

Scott Roberts
Tobias W. Crawford
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300
Emails: sroberts@hrwlawyers.com
tcrawford@hrwlawyers.com

/s/ Elizabeth A. Findley
Elizabeth A. Findley (WSBA #46990)

PLAINTIFF'S OPPOSITION TO NON-PARTY JONES' MOTION TO QUASH- 16-mc-00128-RSL
55848-001 \ 2150966.docx
-13-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000